## FADDELL et al. v. TAYLOR.
### (No. 314–3644.)

(Commission of Appeals of Texas, Section A. April 12, 1922.)

1. Vendor and purchaser ⟨⟩27—"Bond for title" not a conveyance of legal title.

A "bond for title" is not a conveyance of legal title; it is only a contract to convey and may ripen into an equitable title upon payment of the consideration.

[Ed. Note.—For other definitions, see Words and Phrases, Bond for Title.]

2. Estoppel ⟨⟩43 — After-acquired title does not inure to holder of bond for title.

After-acquired title inures to the benefit of parties who are holding under a warranty deed from the party afterwards acquiring the title: but, where the holder of a bond for title acquired his bond from the transferee of the original holder, the acquiring of title by the transferee would not inure to the benefit of the holder in such a way as to ipso facto vest the title in him.

3. Fraudulent conveyances ⟨⟩176(1)—Conveyance of bond for title to defraud creditors cannot be relied on to divest legal title.

Where a father transferred his bond for title to a third person, who in turn conveyed it to a son, to defraud the father's creditors, and the owner of the land afterward conveyed to the father, the father was vested with the legal title subject to the bond, and on his death the legal title vested in his heirs, and the son, claiming under the transfer of the bond for title, could not divest the heirs' title and recover the land; for an executory contract, such as the son's bond for title, will not be enforced if illegal.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by L. B. Taylor against Mrs. Addie G. Faddell and others. From judgment of the Court of Civil Appeals (229 S. W. 965) affirming judgment for plaintiff, defendants bring error. Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered for defendants.

W. R. Petty, Johnson & Gregg, and Seagler & Pickett, all of Palestine, for plaintiffs in error.

Swift & Cotten, of Palestine, for defendant in error.

RANDOLPH, J. This suit was brought in the district court of Anderson county by L. B. Taylor, hereinafter called plaintiff, against Miss Willie W. Taylor, Mrs. Addie Griffeth Faddell, Mrs. Jesse Bell Lambert, his sisters, and other defendants, as an action of trespass to try title to recover the land in controversy.

There being no question as to the pleadings presenting the cause of action and defenses, they will not be stated further.

On the trial of the case before the court without the intervention of a jury, judgment was rendered for the plaintiff, from which judgment the above-named defendants appealed. On hearing of the case before the Court of Civil Appeals at Galveston that court affirmed the case. 229 S. W. 965.

John A. Davis, who is shown by the evidence to have been the administrator of the estate of Bradford Davis, deceased, joined by Mrs. Mary H. Davis, widow of said Bradford Davis, by their bond for title dated October 1, 1867, contracted and bound themselves in the penal sum of $320 to convey to Sarah M. Neely the land in controversy. No period of performance is set in said instrument, but it simply provides that same shall be null and void upon their making such conveyance.

On the 16th of July, 1870, Sarah M. Neely and her husband transferred their rights under this bond to W. W. Taylor, the father of the plaintiff, and the above-named defendants.

On July 2, 1885, W. W. Taylor transferred his rights under said bond to Daniel P. Little, and on the 9th of July, 1887, Daniel P. Little transferred his rights thereunder to L. B. Taylor, the plaintiff.

The consideration for the transfer from W. W. Taylor to Little was Little's promissory note for $640, and the consideration in the transfer from Little to L. B. Taylor was the sum of $640.

It appears from the evidence that the transfer of the bond for title by W. W. Taylor to Little was for the purpose of placing

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

it beyond the reach of his creditors, and that the transfer from Little to L. B. Taylor was made at the instance of W. W. Taylor, and was without consideration.

The defendants offered in evidence a deed from Mary H. Davis, one of the obligors in the original bond for title, conveying the land in controversy to W. W. Taylor, which deed was dated July 25, 1903, and which was filed for record June 4, 1906, and recorded in the deed records of Anderson county.

The evidence shows that L. B. Taylor lived with his father until 1902, at which time he left and went to Louisiana to reside; that he returned in 1911, and was with his father when he died. During the period of time between the transfer to Little and his death, W. W. Taylor continued in possession of the land by tenants, paid the taxes, and collected the rents. After his death the rents were collected and divided equally between his four named children. During all of the time that the bond for title was held by L. B. Taylor to the time of his death, W. W. Taylor exercised all of the rights and performed all acts of ownership, including an attempt to sell the land, which failed of consummation only because the purchaser was unable to make the first payment. The record further discloses that there were no surviving children of Bradford Davis and Mary H. Davis, but that Mary H. Davis was the sole surviving beneficiary of the estate of Bradford H. Davis.

The trial court made findings of fact as follows: (1) That the transfer by W. W. Taylor to Daniel P. Little was to "get the land beyond the creditors of W. W. Taylor." (2) That the transfer by Little to L. B. Taylor was made for that purpose and for the benefit of the son and his three sisters, the above-named defendants. (3) That W. W. Taylor claimed the land sued for from 1886 until the time of his death. (4) That a negro by the name of Bob Chase occupied the land in controversy from October, 1897, up to and including the year 1903 under an executory contract of purchase from W. W. Taylor. (5) That from the death of W. W. Taylor until just before the filing of this suit, plaintiff and defendants above named claimed the land equally as heirs of W. W. Taylor and equally divided the revenues arising from the rent and from the sale of the timber off of the land. (6) That the consideration mentioned in the transfer of bond for title (note for $640) from W. W. Taylor to Daniel P. Little was not in fact executed or paid.

Upon these findings the trial court concluded that the title, being placed in L. B. Taylor in fraud of creditors, needs no consideration to sustain it, neither can his sisters assert the trust in their behalf, and that he having the legal title to the land is entitled to recover in this suit.

The Court of Civil Appeals in sustaining the judgment of the trial court holds that the conveyance from Little to L. B. Taylor on its face was sufficient to pass title to the land in controversy to L. B. Taylor, and that it cannot be attacked, or its effect resisted, by the legal representations of W. W. Taylor, for the reason:

"That if the conveyance is sufficient to place the property beyond the reach of the creditors, it cannot be set aside by the heirs of such grantor."

[1] We do not think that either of these conclusions should be sustained. We cannot understand upon what theory the trial court and Court of Civil Appeals held that the plaintiff was possessed of legal title to the land in controversy. The bond for title is not a conveyance of the legal title; it is only a contract to convey. It may ripen into an equitable title upon payment of the consideration named in the bond.

"A bond for title is in legal effect a contract to convey, and it is so regarded by the courts." 29 Cyc. 1231.

"There is a wide difference between a deed for land and a title bond for land. * * * The one is the evidence of an executed or consummated contract, the other is the evidence of an executory contract; the former is evidence that a sale has been made, the latter that a sale is to be made; the one is a sale and the other is a contract for sale." Mosebey v. Partee, 5 Heisk. (Tenn.) 26; Peterson v. Richman, 93 Tenn. 71, 23 S. W. 53.

The payment of the purchase money stipulated for in the bond vests in the purchaser the equitable title only. Johnson v. Buchanan, 54 Tex. Civ. App. 328, 116 S. W. 875.

Where the price has been paid, a bond for title conveys an equitable title. Wright v. Riley (Tex. Civ. App.) 118 S. W. 1134. (writ denied).

[2] The plaintiff takes the position that W. W. Taylor having received the deed from the obligor in the bond for title such title as he obtained from it inures to the benefit of the plaintiff. After-acquired title inures to the benefit of parties who are holding under a warranty deed from the party afterwards acquiring the title, but we cannot see how this could be made to apply to the claim of plaintiff. Holding a bond for title, if he was entitled to specific performance, he would take the title which W. W. Taylor had obtained from any source, but certainly such after-acquired title would not inure to his benefit in such way as to ipso facto vest the title in him.

[3] Mrs. Davis, the obligor in the bond, and the survivor and sole heir of Bradford Davis, conveyed the land by deed to W. W. Taylor. This vested the legal title in him

subject to the bond for title. On his death the legal title vested in his four heirs share and share alike. To divest this title, plaintiff claiming under bond for title, in order to recover the whole tract, would be compelled to rely upon the conveyance made in fraud of the creditors, hence upon an illegal transaction. This he was not entitled to do.

The bond for title being an executory contract, even if given the full force as claimed by plaintiff, and excluding any trust estate for the benefit of the sisters, the plaintiff would not be in a position to enforce it. The rule that an executed or consummated contract will be sustained, regardless of the fact that it was initiated in fraud of the creditors, as between parties and their privies does not apply where the contract is executory. The courts will not lend their aid to the enforcement of an illegal executory contract under the circumstances of this case.

In Davis v. Sittig, 65 Tex. 501, Judge Stayton, speaking for the Supreme Court of Texas, says:

"There are cases which hold that the maker of a note, given for the purchase money of property, which he knew the payee conveyed to him for the purpose of defrauding his creditors, cannot set up the fraudulent character of the transaction as a defense to the note. Amongst them are Carpenter v. McClure, 39 Vt. 9; Davis v. Mitchell, 34 Cal. 81; Dyer v. Horner, 39 Mass. 260; Sherk v. Endress, 3 W. & S. 255; Springer v. Drosch, 32 Ind. 486.

"These decisions do not recognize any difference between contracts executed and executory, and are based on the language of the statutes declaratory of the illegality of conveyances made to defraud creditors, which, in most of the states, as here, only declare such contracts void as to creditors. Such statutory declaration does not, however, strip such a transaction of its fraudulent character, or give to it standing as a valid contract, which the courts will enforce.

"'The proposition is universal that no action arises, in equity or at law, from an illegal contract; no suit can be maintained for its specific performance, or to recover the property agreed to be sold or delivered, or the money agreed to be paid, or damages for its violation.' Pomeroy, Eq. 940.

"As between the parties to such a contract, who are in equal fault, no right exists which a court of justice will enforce.

"'If the contract has been voluntarily executed and performed, a court of equity will not, in the absence of controlling motives of public policy to the contrary, grant its aid by decreeing a recovery back of the money paid or the property delivered, or a cancellation of the conveyance or transfer. As long as the contract is executory, it cannot be enforced in any kind of an action brought directly upon it. The illegality constitutes an absolute defense.' Pomeroy, Eq. 940.

"And this is so for reasons of public policy, and not from regard for the interest of either party to such a contract. That the contract may have been executed by one party, furnishes no reason why the other should be compelled to execute his part of it yet remaining executory."

In the case at bar, as stated above, the plaintiff's recovery is not based on any title, either legal or equitable. He has only a contract which he might invoke the aid of the court to have specifically performed but for its illegality. Under the rule laid down by Judge Stayton, the bond for title when transferred by W. W. Taylor to Little, and by Little to L. B. Taylor in fraud of W. W. Taylor's creditors, becomes an illegal transaction and cannot be used by plaintiff in enforcing through the courts his claim thereunder as a legal and equitable title, or in any way be aided to enforce it by a court of equity. If it comes within the terms of the law denouncing it as an illegal transaction, it cannot be used, as was done by plaintiff in this case, to enforce any right through the courts. Hall v. Edwards (Tex. Com. App.) 222 S. W. 169; Stone v. Robinson (Tex. Com. App.) 234 S. W. 1094.

It would be a travesty on justice to permit the plaintiff in this suit to claim the full benefit of the transfer made to him to avoid the creditors of the transferee, W. W. Taylor, and at the same time defeat the just claims of his coheirs because of the very fraud which he profits by. Because of the fact that the bond for title in the hands of the plaintiff is unenforceable, we think the case should be decided as though such instrument did not exist, and the deed from Mrs. Davis to W. W. Taylor, conveying the legal title, should be sustained.

We therefore hold that the legal title was vested in W. W. Taylor by the deed from Mrs. Davis, and that such legal title descended to his heirs subject to the bond for title, that, as this bond cannot be enforced for the reasons stated, the title vests in the four heirs free of that incumbrance, and recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that judgment be rendered by the Supreme Court vesting title to an undivided one-fourth interest each in the tract of land here in controversy in L. B. Taylor, Miss Willie W. Taylor, Mrs. Addie Griffeth Faddell (in her own separate right and estate), and Mrs. Jessie Bell Lambert (in her own right and separate estate), and that all costs be taxed against defendant in error, L. B. Taylor.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for plaintiffs in error as recommended.